**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDMUND BENDER, | : |
| Plaintiff, | : |
| | : |
| v. | :    Civil No. 5:24-cv-05750-JMG |
| | : |
| HAIER US APPLIANCE SOLUTIONS, INC. | : |
| d/b/a | : |
| GE APPLIANCES, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM OPINION**

**GALLAGHER, J**                                                    **March 27, 2026**

## I.    OVERVIEW

This matter involves a products liability and subrogation action arising from a residential

fire allegedly caused by a defective GE-brand electric range.[1] Plaintiff, Allstate Vehicle and

Property Insurance Company[2] ("Allstate" or "Plaintiff") claims that the range's burner control

knobs were susceptible to unintended activation, which in turn ignited a fire at the home of its

Insured, Edmund Bender. Following the incident, Allstate paid a claim to Mr. Bender, and in doing

so, acquired by subrogation all rights and claims Mr. Bender may have against any third parties

liable for the loss. Plaintiff now asserts that Defendant is liable for the loss under theories of

---

[1] The Court also notes that the range was manufactured in June 2000 and was originally sold by General Electric Company. In 2016, General Electric Company sold its applicable business unit, and it is not disputed that GE Appliances is now responsible for defending claims relating to the range in question.

[2] The Court notes that the named Plaintiff in the caption is Edmund Bender. However, Plaintiff's original Complaint in the Philadelphia Court of Common Pleas was verified by a representative of Allstate, Plaintiff's subrogating insurance carrier. While Mr. Bender was a properly named party at the time the Complaint was filed, Allstate is the only party in interest following the removal of this action to the U.S. District Court.

negligence, breach of warranties, and strict liability. Before the Court is Defendants' Motion for Summary Judgment. For the following reasons, the Motion is granted in part and denied in part.

## II.    FACTUAL BACKGROUND

On November 13, 2022, a fire occurred at Edmund Bender's home. *See Complaint*, at ¶ 13. Allstate paid out insurance benefits to Mr. Bender and now seeks to recover them in this subrogation action. On the day of the fire, Mr. Bender contends that he did not intentionally use the subject range. *See Raymond Anthony Report*, at A85. However, shortly before leaving his home, he claims to have pushed a crockpot towards the left-rear of the range. *See id.* at A86. When Mr. Bender arrived back home approximately 10 minutes later, he found black smoke coming from the house. *See id.* at A85.

Allstate then retained Ramond Anthony, an origin-and-cause investigator, who determined that the fire was caused by the unintentional activation of the burner. *See id.* at A98. Mr. Anthony's opinion was based on an interview with Mr. Bender after the fire, as well as physical evidence from the range and fire scene, such as the knob for the left rear burner being found in the "on" position after the fire and there being a prominent V-shaped burn pattern on the wall and cabinets behind the range placing the fire originating at the back-left corner of the range. *See id.* at A71. According to Mr. Anthony, the evidence also established that the range was likely activated when the burner's control knob was bumped by the slow cooker. *See id.* at A97. He based this opinion on the facts including the following: the slow cooker was of sufficient height to reach the knob for the left-rear burner; the slow cooker had a plastic housing and line cord jacket that were capable of being the fire's first fuel ignited; an area on the surface of the range directly in front of the left-rear knob was less damaged compared to other areas immediately adjacent to it and contained

melted plastic around it; and the size and shape of the area matched the size and shape of the slow cooker. *See id.*

Plaintiff also retained Michael Stoddard, a safety-engineering expert, who obtained exemplar models of both the electric range and the slow cooker. In conducting his evaluation, Mr. Stoddard tested the range's control knobs and concluded that, as designed, they could be turned to the "on" position in a single motion, contrary to the applicable industry standard. *See Michael Stoddard Report*, at A233-237. Additional testing further indicated that the knobs could be unintentionally activated through minor, incidental contact, including contact from the exemplar slow cooker specifically. *Id.* at 245-248.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that a judge shall "grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party, and the moving party "has the initial burden of demonstrating that *no* genuine issue of material fact exists." *Daniels v. City of Pittsburgh*, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (emphasis added).

To survive a properly supported motion for summary judgment, the nonmoving party must present affirmative evidence of specific facts in the record to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S at 256-57; *Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir. 2005)) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). It is not enough to "deny the allegations in the moving party's pleadings; instead [Plaintiff] must show where in the record there exists a *genuine* dispute over a material fact." *Doe v. Abington Friends School*, 480 F.3d 252, 256 (3d Cir. 2007) (citations omitted) (emphasis added). In making this showing of a genuine dispute, "the non-movant may not rest on speculation and conjecture..." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016). In addition, "conclusory, self-serving affidavits are insufficient to withstand . . . summary judgment." *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012). It is not the role of the Court to weigh the evidence provided by the Parties and make a determination as to which facts are true. Rather, the Court is instructed "to determine if there is a genuine issue for trial." *Josey,* 996 F.2d at 637.

## IV.   ANALYSIS

### a.  Breach of Warranty Claims

Plaintiff initially asserted breach of warranty claims in the Complaint. In responding to the Motion for Summary Judgment, however, Plaintiff voluntarily withdrew those claims. *See Pl.'s Resp. in Opp'n to Def.'s Statement of Facts*. Accordingly, the Court need not reach the merits of the Defendants' arguments, and the withdrawn claims will be dismissed.

### b. Negligence Claims

Plaintiff alleges Defendant acted negligently in numerous respects. As set forth in the Complaint, Plaintiff contends that Defendant failed to exercise reasonable care by improperly manufacturing, assembling, designing, selling, transporting, distributing, and marketing the product; failing to adequately inspect or test the product and its component parts; failing to determine whether the product complied with applicable standards; failing to provide adequate warnings or instructions; and manufacturing, marketing, distributing, and selling the product despite knowing or having reason to know that it and its components were inadequate for their intended use. *See Complaint,* at ¶ 18.

Plaintiff further alleges that Defendant failed to adequately instruct, supervise, train, and monitor its employees and agents; failed to retain competent and qualified personnel; failed to establish or follow adequate controls to ensure proper performance of the above-referenced tasks; failed to warn Plaintiff and others of dangers arising from Defendant's conduct; failed to comply with prevailing industry and governmental standards; and violated applicable states, regulations, codes, and industry customs. *Id.* Plaintiff also contends that Defendant's negligence caused the incident at issue and that, as a result, Plaintiff sustained and incurred damage to their real property. *Id.* at ¶ 19. Defendants, however, contend that summary judgment is warranted because Plaintiff has produced no competent evidence supporting the theory that the alleged defect caused the fire. *See Def.'s Mot. for Summ. J.* The Court disagrees.

To prevail on a negligence claim in Pennsylvania, a plaintiff must establish the following four elements: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Prescott v. R & L Transfer, Inc.*, No. CIV.A. 3:11-203, 2015 WL 418736, at *4 (W.D. Pa. Feb. 2, 2015) (citing

*Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. 2005)). Establishing causation in a fire-cause-and-origin case requires expert testimony, as lay evidence is insufficient to prove the source of the fire. Here, Plaintiff has satisfied that requirement by identifying qualified expert testimony.[3]

Viewing the record in the light most favorable to Plaintiff, the Court concludes that genuine issues of material fact remain. Plaintiff has proffered expert testimony that relevant industry standards require burner-control knobs to incorporate two distinct motions to activate a burner, whereas the subject range's knob could be activated in a single motion. Plaintiff intends to put forward Raymond Anthony, an origin-and-cause expert, who concluded that the fire was caused by the unintended activation of the electric range designed and manufactured by Defendant. *See generally Raymond Anthony Report.* In addition, Plaintiff's safety-engineering expert, Michael Stoddard, further opined that Defendant could have employed a safer alternative consistent with industry standards but failed to do so. *See generally Michael Stoddard Report.*

Defendant's experts, by contrast, opined that the fire resulted from the unattended cooking or from the improper storage of food and combustible materials on the range when a burner was activated. *See generally Erik Swonder Report; Howard Richard Bowles Report.* They further concluded that there is no evidence of any defect or malfunction in the range's control knobs, nor any indication that Mr. Bender inadvertently bumped the slow cooker into the left-rear control knob. *See generally id.*

At its core, then, this case presents a battle of the experts. This "typically precludes the granting of a motion for summary judgment." *Nelson v. Am. Honda Motor Co., Inc.*, No. 1:18-cv-000210, 2021 WL 2877919, at *5 (W.D. Pa. May 17, 2021) (citations omitted). Defendant may

---

[3] The Court has previously determined the experts proffered by the parties are permitted to provide expert testimony at trial. *See* ECF Nos. 43-44.

disagree with Plaintiff's expert and is certainly entitled to challenge the quality of the evidence. But any "issues of credibility and weight of the evidence are properly reserved for [the] trier of fact." *Smith*, 2021 WL 3128674, at *4 (citation omitted); *see also O'Donnell v. Big Yank, Inc.*, 696 A.2d 846, 850 (Pa. Super. Ct. June 18, 1997) ("At trial [defendants] can offer a defense which seeks to prove that [plaintiff] has misidentified them as responsible parties.... This evidence can all be presented before a jury, which can accept or reject it.").

While the evidence against Defendant may not be "conclusive," when viewed in the light most favorable to Plaintiff, it suffices to survive summary judgment. By crediting Plaintiff's expert testimony on industry standards, alternative design, and fire-scene dynamics, a reasonable jury could find for Plaintiff. Moreover, there are genuine disputes of material fact on both defect and causation. Because these issues must be resolved by a jury, summary judgment is inappropriate.

### c. Strict Liability Claims

Plaintiff originally asserted strict liability claims based on theories of design defect, manufacturing defect, and failure to warn. *See Complaint*, at ¶ 30. In responding to Defendants' Motion for Summary Judgment, however, Plaintiff addressed only the design defect theory and offered no argument in support of the manufacturing defect or failure to warn claims. *See Pl.'s Resp. to Def.'s Mot. for Summ. J.* Those theories are therefore deemed withdrawn. Accordingly, the Court's strict liability analysis is limited to Plaintiff's remaining design defect claim.

In Pennsylvania, "[s]trict liability allows a plaintiff to recover where a product in 'a defective condition unreasonably dangerous to the user or consumer' causes harm to the plaintiff." *Phillips v. A-Best Prod. Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995) (citing Restatement (Second) of Torts § 402A (1965)); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853, 854 (1966) (adopting Restatement (Second) of Torts § 402A (1965)). "There are three different types of defective

conditions that can give rise to a strict liability claim: design defect, manufacturing defect, and failure-to-warn defect. *Id.* (citing *Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454, 458 (1992)). These claims require Plaintiff to "establish only two things: that the product was sold in a defective condition unreasonably dangerous to the user, and that the defect caused plaintiff's injury." *Id.* (citing *Walton*, 610 A.2d at 458).

Plaintiff alleges product liability claims based on Defendant's defective design of the electric range. In *Tincher v. Omega Flex, Inc.*, the Pennsylvania Supreme Court declined to adopt the Third Restatement of Torts in the context of design defect cases, so design defect strict liability claims remain pursuant to Section 402A of the Second Restatement of Torts. 628 Pa. 296, 104 A.3d 328 (2014). So, "[i]n order to prevail in a product liability case [based on a design defect theory], a plaintiff must establish: (1) that the product was defective; (2) that the defect existed when it left the hands of the defendant; and (3) that the defect caused the harm." *Davis v. Berwind Corp.*, 433 Pa. Super. 342, 640 A.2d 1289, 1295 (1994), *aff'd*, 547 Pa. 260, 690 A.2d 186 (1997).

In *Tincher*, the Pennsylvania Supreme Court found "a person or entity engaged in the business of selling a product has a duty to make and/or market the product—which 'is expected to and does reach the user or consumer without substantial change in the condition in which it is sold'—free from 'a defective condition unreasonably dangerous to the consumer or [the consumer's] property.' " *Tincher*, 104 A.3d at 328 (citing Restatement (Second) of Torts § 402A(1) (1965)). "To demonstrate a breach of duty in a strict liability matter, a plaintiff must prove that a seller (manufacturer or distributor) placed on the market a product in a 'defective condition.'" *Id.* at 384.

"Additionally, 'in Pennsylvania, the cause of action in a strict products liability requires proof ... either of the ordinary consumer's expectations or of the risk-utility of a product.'" *Id.* at

401. So "[t]he plaintiff may prove the product is 'defective' by showing that either: (1) 'the danger is unknowable and unacceptable to the average or ordinary consumer' (the 'consumer expectations standard'); or (2) 'a 'reasonable person' would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions' (the 'risk-utility standard')." *Nelson v. Am. Honda Motor Co.*, No. 118CV000210ERIE, 2021 WL 2877919, at *8 (W.D. Pa. May 17, 2021), *report and recommendation adopted*, No. 1:18-CV-210 SPB/RAL, 2021 WL 2646840 (W.D. Pa. June 28, 2021) (citing *Tincher*, 104 A.3d at 385-91). A plaintiff "only needs to prevail on one" theory to show a defect. *Id.* (citing *Tincher*, 104 A.3d at 391). But "even if a plaintiff can satisfy the first step and show—using either the consumer expectations test or the risk-utility test—that the product was defective, the plaintiff must also show that the alleged defect caused his injuries." *Wright v. Ryobi Techs., Inc.*, 175 F. Supp. 3d 439, 453 (E.D. Pa. 2016).

Here, Plaintiff contends that the electric range is defective because the burner control knobs were subject to unintentional activation. Plaintiff contends that the range is defective under both the Consumer Expectation Test and the Risk-Utility Standard. *See Pl.'s Resp. to Def.'s Mot. for Summ J.* Defendant submits that Plaintiffs' claim is unable to proceed to trial because Plaintiff has no competent evidence to show that the alleged defect caused the fire at issue – a necessary element of a strict liability claim. *See Def.'s Mot. for Summ. J.* at 7-10.

Under either theory of strict liability, summary judgment is not warranted. With respect to the consumer-expectations test, a product is defective if it is "upon normal use, dangerous beyond the reasonable consumer's contemplations." *High v. Pennsy Supply, Inc.*, 154 A.3d 341, 348 (Pa. Super. 2017). The test asks whether "the danger is unknowable and unacceptable to the average or ordinary consumer." *Id.* Plaintiff argues that a reasonable jury could find the range more dangerous than an ordinary consumer would anticipate. *See Pl.'s Resp. to Def.'s Mot. for Summ J.* at 7-9.

9

According to Plaintiff, the evidence shows that: (1) the fire resulted from the inadvertent activation of the range's burner-control knob;   (2) the alleged defect was present when the product left Defendant's control; and (3) the knob could be turned to the "on" position in a single motion, contrary to the applicable industry standards requiring two distinct motions to activate a burner. *Pl.'s Mem. in Opp. To Def.'s Mot. for Summ. J.*, at 7-9. Plaintiff intends to present expert testimony supporting the fire's cause, the applicable industry standards, and feasible alternative designs. This evidence, if credited, could permit a jury to determine that the risk of fire associated with inadvertent activation rendered the range defective under the consumer-expectations test.

The risk-utility test likewise precludes summary judgment. Under that test, "a product is in a defective condition if a 'reasonable person' would conclude that the probability and seriousness of harm caused by the product outweigh the burden of costs of taking precautions." *Tincher*, 104 A.3d at 389. In other words, a seller's precautions must reasonably reflect the type and magnitude of the risk posed by the product's use. *Id.* Plaintiff argues that the evidence would allow a jury to find that the fire was caused by the inadvertent activation of the range and that the range was defective when it left GE's control. *Pl.'s Mem. in Opp. To Def.'s Mot. for Summ. J.*, 9-11. Plaintiff intends to introduce evidence that thousands of fires have resulted from unintended range activation; that such fires can cause severe injury or death; that all of the range's knobs can be unintentionally turned to the "on" position without the user's awareness; and that GE could have implemented several safer, feasible design alternatives that would have prevented the fire. *Id.* at 10. Viewed in the light most favorable to Plaintiff, this evidence is sufficient to allow a reasonable jury to find a defect under the risk-utility test.

Defendants argue that they are entitled to summary judgment because Plaintiff was not using the range for its "intended purpose" at the time of the fire. *Def.'s Reply Brief in Support of*

*Def.'s Mot for Summ. J.* at 2-6. According to Defendants, Pennsylvania law recognizes strict liability only for intended uses. *See generally id.* That contention misstates Pennsylvania law. Pennsylvania applies Section 402A of the Restatement (Second) of Torts, under which a manufacturer is strictly liable for injuries caused by a product sold "in a defective condition unreasonably dangerous to the user or consumer." *Soufflas v. Zimmer, Inc.*, 474 F. Supp. 2d 737, 749 (E.D. Pa. 2007); *Mazur v. Merck & Co.*, 964 F.2d 1348, 1353 (3d Cir. 1992). The inquiry is not limited to the manufacturer's narrow conception of the product's intended purpose. Courts have long held that strict liability extends to both the product's intended use and to reasonably foreseeable misuse. Misuse bars recovery only where the user's conduct is so extraordinary, unforeseeable, or reckless that it breaks the chain of causation as a matter of law. Whether a particular use or misuse was reasonably foreseeable is ordinarily a question for the jury.

On this record, Defendants have not shown that Plaintiff's conduct constituted unforeseeable misuse as a matter of law. Plaintiff was using the stove as a surface on which to store a cooktop. The practice of placing cookware, pans, or other kitchen items on a stovetop is common in household kitchens and plainly foreseeable to a stove manufacturer. Indeed, Plaintiff's theory of defect is that the stove's control knobs could be activated with a single, inadvertent motion, contrary to industry standards requiring a two-step or push-to-turn mechanism designed precisely to prevent accidental ignition. A jury could reasonably conclude that accidental contact with a burner knob is a foreseeable event and that the alleged design defect rendered the stove unreasonably dangerous in light of that foreseeable risk.

Defendants' argument that strict liability is categorically unavailable because Plaintiff was not "cooking" at the time of the incident therefore fails. Pennsylvania law does not confine strict liability to the manufacturer's preferred or idealized use of the product. The relevant question is

11

whether the use, or misuse, was reasonably foreseeable. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that it was.

Accordingly, Defendants are not entitled to summary judgment on the strict liability claim.

## V.    CONCLUSION

While some claims are resolved at this stage, there are triable issues of fact in this case. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 28) must be granted in part and denied in part. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge